## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA

|  |  |
|---|---|
| RANDY DENNY and MICHELE GOLEMBECK, on behalf of themselves and all others similarly situated,<br><br>              Plaintiffs,<br><br>      vs.<br><br>LOWES COMPANIES, INC.<br><br>            Defendant. | **Civil Action No.:**<br><br><br><br><br>**CLASS ACTION COMPLAINT** |

Plaintiffs Randy Denny and Michele Golembeck, individually and on behalf of the Class defined below of similarly situated persons, allege the following against Lowes Companies, Inc. ("Lowes" or "Defendant") based upon personal knowledge with respect to themselves and on information and belief derived from, among other things, investigation of counsel and review of public documents as to all other matters:

### NATURE OF THE ACTION

1.      It is both unfair and unlawful for entities like Lowes to impose discriminatory and punitive health insurance surcharges on employees who use tobacco products. This lawsuit challenges Lowes' unlawful practice of charging a "tobacco surcharge" without complying with the regulatory requirements under the Employee Retirement Income Security Act of 1974 ("ERISA"). Under ERISA, wellness programs must offer, and provide notice of, a reasonable alternative standard that allows all participants to obtain the "***full reward***"—including refunds for surcharges paid while completing the program. 29 U.S.C. § 1182(b)(2)(B); 42 U.S.C. § 300gg-4(j)(3)(D). Rather than comply with these requirements, the Lowes Welfare Plan (the "Plan"),

1

imposes a flat bi-weekly surcharge on tobacco users without offering a compliant alternative standard or providing the required notice of that alternative standard. In doing so, Lowes violates federal regulations and deprives employees of health plan benefits to which they are entitled under ERISA.

2.      Tobacco surcharges have become more prevalent in recent years but, to be lawful, plans can impose these surcharges only in connection with *compliant* "wellness programs," meaning they must adhere to strict rules set forth by ERISA and the implementing regulations established by the Departments of Labor, Health and Human Services, and the Treasury (collectively, the "Departments") over ten years ago in 2014. ERISA imbues the Departments with the authority to promulgate regulations interpreting ERISA § 702, 29 U.S.C. § 1182, the statute's non-discrimination provision. Accordingly, the Departments have issued clear regulatory criteria that "must be satisfied" to qualify for the statutory exception or safe-harbor, which employers can invoke only if they affirmatively demonstrate full compliance with all these strict requirements in response to claims that their program is discriminatory. Moreover, courts must defer to the agency's interpretation of its own regulations, if that interpretation is neither plainly erroneous nor inconsistent with the regulatory framework, *Auer v. Robbins*, 519 U.S. 452 (1997), ensuring that plans cannot evade ERISA's anti-discrimination protections by selectively or improperly applying these rules.

3.      The strict regulatory requirements are meant to ensure that wellness programs actually promote health and preclude discrimination, instead of these programs being a "subterfuge for discriminating based on a health factor." The regulations make clear, that for plans to be compliant, they must provide a clearly defined, reasonable alternative standard that allows all participants to obtain the full reward, including retroactive refunds of surcharges paid while

2

completing the alternative standard. A wellness program must be genuinely designed to improve health or prevent disease, rather than functioning as an improper penalty imposed on certain participants under the guise of a health initiative. Lowes' Plan fails to meet these basic requirements: it does not clearly establish a reasonable alternative standard to avoid the surcharge, does not inform employees of their rights to avoid the surcharge, does not ensure that employees who complete the alternative receive the full reward, and unlawfully shifts costs onto employees in violation of ERISA's wellness program regulations.

4. The need for regulatory safeguards surrounding these types of wellness programs is underscored by studies showing little evidence that wellness programs effectively reduce healthcare costs through health improvement. Instead, the savings employers claim often result in cost-shifting onto employees with higher health risks, disproportionately burdening low-income and vulnerable workers who end up subsidizing their healthier colleagues.[1] Without proper oversight, wellness programs risk becoming thinly veiled revenue-generating schemes, particularly when employers impose arbitrary barriers, such as unclear requirements, delayed timing, or onerous documentation, that make it unnecessarily difficult for employees to avoid surcharges. The regulatory framework is designed to prevent such misuse by shifting the burden to plan sponsors to demonstrate compliance once a participant challenges a discriminatory surcharge. The overarching goal is to ensure that wellness programs operate equitably and in a

---

[1] *See* Horwitz, J. R., Kelly, B. D., & DiNardo, J. E. (2013). *Wellness incentives in the workplace: Cost savings through cost shifting to unhealthy workers*. Health Affairs, 32(3), 468–476, 474 ("wellness programs may undermine laws meant to prevent discrimination on the basis of health status. Since racial minorities and people with low socioeconomic status are more likely than others to have more health risks, they are also more likely to be adversely affected by cost shifting"); *see also* Dorilas, E., Hill, S. C., & Pesko, M. F. (2022). *Tobacco surcharges associated with reduced ACA marketplace enrollment*. Health Affairs, 41(3), Abstract (finding that tobacco surcharges are significant barriers to affordable health insurance).

3

non-discriminatory manner, and that they promote genuine health improvements rather than simply penalizing those who are least able to bear additional costs.

5. Outcome-based programs,[2] such as smoking cessation programs, must offer a clearly defined "*reasonable* alternative standard," which is an alternative way for "all similarly situated individuals" to obtain the reward (or avoid a penalty) if they are unable to meet the initial wellness program standard (i.e., being tobacco-free). Critically, ERISA's implementing regulations require that "the *same*, *full reward*" must be provided to individuals who complete the alternative standard, regardless of when they do so during the plan year.[3] The Department of Labor ("DOL") has made clear that participants should not be forced to rush through the program under the threat of continued surcharges and that every individual participating in the program must receive the same reward as provided to non-smokers. *Id.* The Departments made this requirement clear when they stated it is "[t]he intention of the Departments . . . that, regardless of the type of wellness program, ***every individual participating in the program*** should be able to receive ***the full amount of any reward or incentive*** . . . ." *Id.*, 33160 (emphasis added). Lowes violates these requirements by failing to offer a reasonable alternative standard that provides the full reward, including retroactive reimbursement, to employees who complete the alternative. Lowes further

---

[2] "An outcome-based wellness program is a type of health-contingent wellness program that requires an individual to attain or maintain a specific health outcome (such as not smoking or attaining certain results on biometric screenings) in order to obtain a reward." 29 C.F.R. § 2590.702(f)(1)(v).

[3] *Incentives for Nondiscriminatory Wellness Programs in Group Health Plans*, 78 Fed. Reg. 33158, 33163 (June 3, 2013) (hereinafter the "**Final Regulations**") ("while an individual may take some time to request, establish, and satisfy a reasonable alternative standard, ***the same, full reward must be provided to that individual*** as is provided to individuals who meet the initial standard for that plan year. (For example, if a calendar year plan offers a health-contingent wellness program with a premium discount and an individual who qualifies for a reasonable alternative standard satisfies that alternative on April 1, the plan or issuer must provide the premium discounts for January, February, and March to that individual.)" (emphasis added)).

4

fails to clearly communicate the availability of a *reasonable* alternative standard in **all** relevant plan materials, including, upon information and belief, plan documents and summary plan descriptions ("SPDs"). These omissions and structural flaws constitute direct violations of ERISA's wellness program regulations.

6.     Lowes is not entitled to the statutory safe harbor because its wellness program fails to satisfy the mandatory regulatory requirements, which "must be satisfied," (*id.*, 33160) for a premium differential based on a health factor to be lawful under ERISA. Final Regulations, 33160. The core deficiency of Lowes's wellness program is that it does not offer a reasonable alternative standard that provides the "full reward" to all participants who satisfy the alternative standard, as explicitly required by Section 702 of ERISA, 29 U.S.C. § 1182, 42 U.S.C. § 300gg-4(j)(3)(D), and 29 C.F.R. § 2590.702(f)(4) and 45 C.F.R. § 146.121(f)(4). Employees are unable to complete an alternative standard and are **not** provided with a retroactive refund of the tobacco surcharge, meaning the Plan fails to comply with ERISA's requirements regarding premium differentials based on a health factor.

7.     Further, Lowes failed to provide notice. Lowes failed to inform participants of a reasonable alternative standard that provides the "full reward" and failed to include a statement that a participant's physician's recommendations would be accommodated, in violation of the regulations. Upon information and belief, Lowes failed to include the required notice and disclosures in **all** Plan/Benefits materials as required. Again, because Defendant's wellness program does not satisfy the necessary regulatory criteria for a "program[] of health promotion," Defendant's wellness program fails to qualify under the statutory safe harbor, meaning the tobacco surcharge it imposes on participants is unlawful and discriminatory in violation of ERISA.

5

8.     Lowes's failure to comply with these requirements strips it of any safe harbor protection. Rather than operating a lawful wellness initiative, Lowes uses its surcharge program to shift costs onto employees, retain funds improperly, earn interest on those funds, and reduce its own contributions to the Plan. These actions not only violate ERISA's wellness program regulations but also constitute breaches of fiduciary duty, as Lowes failed to administer the Plan solely in the interest of participants and beneficiaries, and instead acted to advance the company's own financial interests at employees' expense.

9.     This Complaint alleges that Lowes imposes a discriminatory and unlawful tobacco surcharge. Lowes bears the burden of proving that its tobacco surcharge program fully complies with every regulatory requirement under ERISA, including providing a clearly defined, reasonable alternative standard that allows all participants to avoid the surcharge and receive a full refund if they satisfy the alternative. Lowes cannot meet this burden, and its tobacco surcharge is not a lawful wellness incentive, but an impermissible penalty imposed on employees based on a health factor. Lowes' Plan does not offer a genuine "program[] of health promotion or disease prevention" as required by ERISA but instead an impermissible cost-shifting scheme that unlawfully penalizes employees for their health status.

10.     Plaintiffs are former employees of Lowes who paid the unlawful tobacco surcharges to maintain health insurance coverage under the Plan. This surcharge imposed an additional financial burden on Plaintiffs and continues to impose such a burden on those similarly situated.

11.     Plaintiffs bring this lawsuit individually and on behalf of all similarly situated Plan participants and beneficiaries, seeking to recover these unlawfully charged fees and for Plan-wide equitable relief to prevent Lowes from continuing to profit from its violations under 29 U.S.C. §

6

1109. Under 29 U.S.C. § 1109, Defendant is a fiduciary of the Plan who has a legal obligation to act in the best interests of Plan participants and to comply with federal law. Plaintiffs, on behalf of themselves and the Plan as a whole, seeks appropriate equitable relief under 29 U.S.C. §§ 1132(a)(2) and (a)(3) to address Defendant's ongoing violations of ERISA's anti-discrimination provisions.

## PARTIES

12.     Plaintiff Randy Denny is an individual citizen of the State of North Carolina residing in the County of Onslow. Plaintiff Denny was an employee at a Lowes store in Connecticut, who paid a tobacco surcharge in the form of increased premiums for health insurance offered through Lowes during his employment. Plaintiff Denny was required to pay this tobacco surcharge to maintain health insurance under the Plan.

13.     Plaintiff Michele Golembeck is an individual citizen of the State of Texas residing in the County of Rusk. Plaintiff Golembeck was an employee at a Lowes store in Texas, who paid a tobacco surcharge in the form of increased premiums by roughly $45 per pay period for health insurance offered through Lowes during her employment. Plaintiff Golembeck was required to pay this tobacco surcharge to maintain health insurance under the Plan

14.     Plaintiffs are participants in the Plan pursuant to 29 U.S.C. § 1002(7).

15.     Lowe's Companies, Inc. is one of the largest home improvement retailers in the United States, providing a wide range of home improvement products, services, and installation solutions to millions of customers nationwide. It operates retail locations across the country. Defendant is a North Carolina corporation with its principal place of business in Mooresville, North Carolina.

7

16.     Lowes is the sponsor of the Plan and the Plan Administrator under 29 U.S.C. § 1002(16). Lowes employs thousands of individuals and there are over 277,000 participants in the Plan as of December 31, 2023. Lowes's employee benefit plan is subject to the provisions and statutory requirements of ERISA pursuant to 29 U.S.C. § 1002(3).

## JURISDICTION AND VENUE

17.     The Court has subject matter jurisdiction pursuant to 29 U.S.C. §1132(e)(1) and § 28 U.S.C. 1331, as this suit seeks relief under ERISA, a federal statute. It also has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. Upon information and belief, the number of class members is over 1,000, many of whom have different citizenship from Defendant. Thus, minimal diversity exists under 28 U.S.C. § 1332(d)(2)(A).

18.     This Court has personal jurisdiction over Defendant because it is headquartered in this District, and Defendant has purposefully availed itself of the privilege of conducting business in North Carolina.

19.     Venue is proper in this District under 2 U.S.C. 1132§ (e)(2) because Defendant is headquartered in this District and this is a District in which Defendant may be found.

## FACTUAL BACKGROUND

**I.     DEFENDANT'S TOBACCO SURCHARGE VIOLATES ERISA'S ANTI-DISCRIMINATION RULE**

### A. Statutory and Regulatory Requirements

20.     To expand access to affordable health insurance coverage, the Affordable Care Act ("ACA") amended ERISA to prohibit any health insurer or medical plan from discriminating against participants in providing coverage or charging premiums based on a "health-related factor," including tobacco use. Under this rule, a plan "may not require any individual (as a

8

condition of enrollment or continued enrollment under the plan) to pay a premium or contribution that is greater than such premium or contribution for a similarly situated individual enrolled in the plan based on any health-related factor in relation to the individual or to an individual enrolled under the plan as a dependent of the individual." ERISA § 702(b)(1), 29 U.S.C. § 1182(b)(1).

21.     The statute permits group health plans to "establish[] premium discounts or rebates . . . in return for adherence to *programs of health promotion and disease prevention*" (29 U.S.C. § 1182(b)(2)(B)(emphasis added)); however, these "wellness programs"—to qualify for this statutory safe-harbor exception—must strictly adhere to the mandated regulatory requirements.

22.     Under ERISA § 505, 29 U.S.C. § 1135, Congress granted the Department of Labor the authority to issue regulations, including the power to establish regulations prohibiting discrimination against participants and beneficiaries based on their health status under ERISA § 702, 29 U.S.C. § 1182. This authority empowers the Secretary of Labor (the "Secretary") to "prescribe such regulations as he finds necessary or appropriate to carry out the provisions of" Title I of ERISA. (29 U.S.C. § 1135). Furthermore, ERISA § 734, 29 U.S.C. § 1191c, explicitly reinforces the Secretary's authority to issue regulations concerning group health plan requirements, which grants the power to "promulgate such regulations as may be necessary or appropriate to carry out the provisions" of ERISA Title I, Part 7. 29 U.S.C. § 1191c.

23.     Exercising this delegated authority, in 2006, the Secretary issued regulations through the notice-and-comment rulemaking process outlining the criteria that a wellness program must meet to qualify for the premium non-discrimination exception under ERISA § 702(b). *See* Final Regulations, 33158–59. Following the amendments by the Affordable Care Act ("ACA") and Public Health Service Act ("PHSA") in 2010, the Departments published proposed regulations

9

in November 2012 to "amend the 2006 regulations regarding nondiscriminatory wellness programs." *Id.*, 33159. These regulations (i.e., the Final Regulations) were approved and signed in 2013 to be effective January 1, 2014. *Id.*, 33158.

24.　　The Final Regulations specify that health promotion or disease prevention programs, such as outcome-based wellness initiatives (i.e., smoking cessation programs), must meet detailed requirements to qualify for the safe harbor. As the Departments explained, these criteria "***must be satisfied*** in order for the plan or issuer to qualify for an exception to the prohibition on discrimination based on health status." *Id.*, 33163. "That is," the Departments explained, "these rules set forth criteria for an ***affirmative defense*** that can be used by plans and issuers in response to a claim that the plan or issuer discriminated" against participants. *Id.* (emphasis added). That means once a participant alleges a discriminatory surcharge, the burden is on the employer to prove that it complied with *all* the necessary regulatory criteria and that the surcharge is non-discriminatory.

25.　　Compliance with the regulatory criteria is not optional. These criteria serve as the standard by which these wellness programs can be evaluated and are the only lawful pathway for plans to impose health-based premium differentials without violating ERISA's anti-discrimination provisions. *See* Final Regulations, 33160 ("***these [F]inal [R]egulations set forth criteria for a program of health promotion or disease prevention*** . . . that ***must be satisfied*** in order for the plan or issuer to qualify for an exception to the prohibition on discrimination . . . ." (emphases added)).

26.　　In satisfying each of the criteria, plans can ensure that wellness programs are "not a subterfuge for underwriting or reducing benefits based on health status." *Id.* They prevent employers from using surcharges as a revenue-generating mechanism dressed up as a program of health promotion. If a program fails to meet even one of these requirements, the program does not

10

qualify as a "program[] of health promotion" and cannot qualify under ERISA's statutory carve-out. In that case, any premium differentials imposed based on a health factor violate the statute's anti-discrimination provisions. *See* § 2590.702(f)(4) (describing the "[r]equirements for outcome-based wellness programs," stating that a program "does not violate the provisions of this section *only if __all__ of the [] requirements are satisfied*." (emphasis added)).[4] In sum, a wellness program that fails to satisfy each criterion is not a legitimate health promotion initiative but an unlawful penalty that discriminates based on health status, in direct violation of ERISA's protections.

### B. Regulatory Criteria

27.     To comply with ERISA and avoid unlawful discriminatory surcharges, outcome-based wellness programs must meet the following five (5) criteria:

(a) Frequency of opportunity to qualify: Participants must be given at least one chance annually to qualify for the reward associated with the program to ensure ongoing accessibility and fairness. 29 C.F.R. § 2590.702(f)(4)(i).

(b) Size of reward: penalties or rewards cannot exceed 50% of the cost of employee-only coverage. § 2590.702(f)(4)(ii)

---

[4] Congress codified parts of the 2006 regulations regulatory criteria when, through the Patient Protection Act ("PPA") and ACA, it amended the PHSA, and incorporated (nearly verbatim) the regulatory language into ERISA. *See* 42 U.S.C. § 300gg-4(j)(3); 29 U.S.C. § 1185d(a)(1) ("[T]he provisions of part A of title XXVII of the [PHSA] [42 U.S.C. § 300gg *et seq.*] (as amended by the [PPA and ACA]) shall apply to group health plans, and health insurance issuers providing health insurance coverage in connection with group health plans, as if included in this subpart[.]"). Since then, the Departments have, in accordance with the they were granted, updated the regulatory framework through the Final Regulations, refining and clarifying the requirements to ensure compliance with ERISA's nondiscrimination provisions and the statutory criteria established by Congress. *See* 42 U.S.C. § 300gg-4(n) ("Nothing in this section shall be construed as prohibiting the Secretaries of Labor, Health and Human Services, or the Treasury from promulgating regulations in connection with this section"); *see also* 45 C.F.R. § 146.121(f) (adopting identical language to § 2590.702(f)).

(c) Reasonable design: programs must be "reasonably designed" to promote health and cannot be "a subterfuge for discriminating based on a health factor." This determination is based on all the relevant facts and circumstances. "To ensure that an outcome-based wellness program is reasonably designed to improve health and does not act as a subterfuge for underwriting or reducing benefits based on a health factor, a reasonable alternative standard to qualify for the reward must be provided to any individual who does not meet the initial standard based on a measurement, test, or screening. . . ." § 2590.702(f)(4)(iii)).

(d) Uniform availability and reasonable alternative standards: "The *full reward* under the outcome-based wellness program must be available to *all similarly situated individuals*." 29 C.F.R. § 2590.702(f)(4)(iv) (emphasis added).

(e) Notice of availability of reasonable alternative standard: notice must include (a) instructions on how to access the reasonable alternative standard; (b) contact information for inquiries about the alternative standard; and (c) an explicit statement that participants' personal physician's recommendations will be accommodated. *See* § 2590.702(f)(4)(v).

28. The Departments provided valuable insight into each of the criteria, reflecting their intent to operationalize the statute's protections in a manner that both promotes health and prevents discriminatory practices under ERISA.

29. Regarding the first criteria, "the once-per-year requirement was included as a bright-line standard for determining the minimum frequency that is consistent with a reasonable design for promoting good health or preventing disease." Final Regulations, 33162. The once-per-

12

year requirement ensures that participants have a meaningful opportunity to participate in a reasonable alternative standard.

30.     A key requirement of the fourth criterion for outcome-based programs is that the "full reward" must be available to "all similarly situated individuals[,]" regardless of when they meet the reasonable alternative standard during the plan year. *See* Final Regulations, 33165. Critically, the Departments clearly state that it is "[t]he intention of the Departments . . . that, regardless of the type of wellness program, *every individual* participating in the program should be able to receive the ***full amount of any reward or incentive*. . . ."** *Id.* (emphases added). While plans have flexibility in determining the manner in which they provide the "full reward," providing the "full reward" to every participant is ***mandatory***, regardless of when the participant satisfies the alternative standard. The Departments have made this clear:

> While an individual may take some time to request, establish, and satisfy a reasonable alternative standard, ***the same, full reward must be provided to that individual as is provided to individuals who meet the initial standard for that plan year***. (For example, if a calendar year plan offers a . . . premium discount and an individual . . . satisfies that alternative on April 1, the plan or issuer must provide the premium discounts for January, February, and March to that individual.) Plans and issuers have flexibility to determine ***how*** to provide the portion of the reward corresponding to the period before an alternative was satisfied (e.g., payment for the retroactive period or pro rata over the remainder of the year) ***as long as . . . the individual receives the full amount of the reward***.

Final Regulations, 33163 (emphases added).

31.     The Final Regulations provide an example of a non-compliant plan that imposes a tobacco use surcharge but does not facilitate the participant's enrollment in or participation in a smoking cessation program. *See id.*, Example 8. Instead, the employer advises the participant to find a program, pay for it, and provide a certificate of completion. *Id*. The Final Regulations

13

conclude that the plan is not compliant because it "has not offered a reasonable alternative standard . . . and the program fails to satisfy the requirements of paragraph (f) of this section." *Id.*; Final Regulations, 33180.

32.     For health contingent wellness programs, the Final Regulations require the notice be disclosed "in ***all*** plan materials describing the terms of" the program. 29 C.F.R. § 2590.702(f)(3) and (4) (emphasis added); *see also* 42 U.S.C. § 300gg-4(j)(3)(E). Further, the Final Regulations establish that "[f]or ERISA plans, wellness program terms (including the availability of any reasonable alternative standard) are generally required to be disclosed in the summary plan description (SPD), as well as in the applicable governing plan documents . . . if compliance with the wellness program affects premiums . . . under the terms of the plan." Final Regulations, 33166. Thus, plans that charge their participants more and fail to provide a reasonable alternative standard or the requisite notice violate these requirements, preventing these wellness programs from qualifying for the safe-harbor exception and establishing them as discriminatory wellness programs.

33.     Lowes' tobacco surcharge is unlawful because it is a surcharge and not a premium discount or a rebate. Further, even if imposing a surcharge were permissible, it would only be permissible if Lowes offered a compliant wellness program. However, Lowes does not provide a compliant wellness program because its program fails to comply with the Final Regulations governing wellness programs. As discussed, the Final Regulations provide that outcome-based wellness programs, such as those involving tobacco cessation programs, are permissible under ERISA ***only if all regulatory requirements are satisfied***. *See* 29 C.F.R. § 2590.702(f)(4).

## II.     DEFENDANT CANNOT AVAIL ITSELF OF ERISA'S SAFE HARBOR

34.     Lowes' tobacco surcharge program violates ERISA because it is not "program[] of health promotion or disease prevention." 29 U.S.C. § 1182(b)(2)(B). To qualify for ERISA's safe harbor under § 1182(b)(2)(B), a wellness program must offer a clearly defined, reasonable alternative standard and ensure that all participants who satisfy it receive the full reward. Lowes's Plan fails to meet these requirements. It does not clearly offer an alternative standard at least once during the Plan year that provides the "full reward." Further, Lowes does not provide proper notice of a reasonable alternative standard in all communications to participants regarding the tobacco surcharge and does not provide the required disclosures.

35.     To start, Lowes's wellness program violates ERISA and its implementing regulations by failing to provide an alternative standard that provides participants with the "full reward" required under 29 C.F.R. § 2590.702(f)(v)(iv). Specifically, Lowes imposes a tobacco surcharge without providing an alternative standard that reimburses participants.

36.     A benefits program highlight flyer simply provides that "[u]sers of tobacco products will be subject to higher premium contributions." Other materials contain similar disclosures but fail to provide any information about an alternative standard or any other means of avoiding the surcharge. Upon information and belief, there is no alternative standard offered and, as a result, there is no avenue for participants to avoid the surcharge for the entire year. It is not clear whether completion of some program can result in the removal of the surcharge on a *prospective* basis only, there is no provision detailing an avenue for obtaining retroactive reimbursement. By failing to offer an alternative standard that provides retroactive reimbursements, Defendant denies participants the "full reward," rendering the tobacco surcharge noncompliant and discriminatory under ERISA's regulatory framework.

15

37.     Lowes also fails to provide the required notice to participants.[5] As discussed, ERISA's implementing regulations require employers to clearly communicate the availability of a reasonable alternative standard to participants in all plan materials discussing premium differentials, including the plan document and SPD. Defendant failed to meet these notification requirements.

38.     While certain benefits materials discuss the premium differential, they do not provide information or guidance about enrolling in a smoking cessation program to avoid the surcharge. Further, the benefits materials omit any mention that participants' physicians' recommendations will be accommodated, as required by ERISA's wellness program regulations. These deficiencies deprive participants of the information necessary to fully understand and exercise their rights.

39.     Plaintiff Denny was a manager at Lowe's and despite his managerial role, no one from Human Resources or the Benefits Department ever informed him about the existence of an alternative standard or any other steps he could have taken to avoid the tobacco surcharge. He never received notice explaining that he could avoid the higher premium payments if he enrolled in a tobacco cessation program or completed a reasonable alternative standard. Lowes' failure to inform even management-level employees like Plaintiff Denny underscores the inadequate measures taken by Defendant to ensure participants were aware of avenues to avoid the surcharge and highlight the company's failure to comply with ERISA's notice and disclosure requirements.

---

[5] Prior to filing this action, counsel for Plaintiffs contacted Defendant to request plan documents, the SPD, and other information to which participants are entitled under ERISA. In response, Defendant issued an automated message stating that a subpoena would be required to obtain such records, contrary to ERISA's mandate that plan administrators must furnish plan documents upon written request from participants or their representatives.

16

40. Defendant also failed to include information about the smoking cessation program in the Plan Document and, upon information and belief, Defendant has provided participants with other communications discussing the tobacco surcharge and cessation program that do not address participants' rights to a compliant alternative standard that would allow them to avoid the surcharges for the entire Plan year or the statement regarding a participant's physician's recommendations being accommodated. Without this disclosure, participants are unaware of their rights under ERISA and cannot access alternative means to avoid the surcharge.

41. Had Defendant provided participants with adequate notice of the availability of a reasonable alternative standard, including clear instructions and contact information in all plan materials referencing the surcharge as well as a notice of participants' rights to have their personal physician's recommendations accommodated, Plaintiffs and similarly situated individuals could have taken steps to avoid or reduce the unlawful tobacco surcharge. Defendant's failure to provide this required notice deprived participants of the opportunity to exercise their rights under ERISA and directly contributed to the financial harm suffered by the Class.

42. By failing to meet the regulatory requirements, Lowes's tobacco surcharge is discriminatory, and in clear violation of ERISA and its implementing regulations.

43. Allowing corporate entities like Lowes to exploit their participants and unlawfully extract millions from them under the guise of a wellness program that is, in reality, a cash grab, directly contradicts ERISA's purpose of protecting workers from health-based discrimination. If unchecked, this practice would permit employers to manipulate wellness programs to deter participation and to disguise discriminatory revenue-generating schemes as health initiatives, shifting unjust financial burdens onto employees in violation of federal law.

17

## III.   DEFENDANT'S SELF-DEALING AND MISMANAGEMENT OF PLAN FUNDS

44.     Defendant controls the administration of the tobacco surcharge, determining which participants are charged and withholding the surcharge amounts directly from participants' paychecks. These amounts are not placed in a trust account for the Plan but are instead deposited into Lowes' general accounts.

45.     By retaining these funds, Lowes earns interest on the withheld surcharges and reduces its own financial contributions to the Plan. This practice constitutes self-dealing and violates ERISA's fiduciary duty requirements, which mandate that Plan assets be managed exclusively in the interest of participants and beneficiaries.

46.     Defendant has fiduciary responsibilities to ensure that these funds are used to support coverage for participants' health insurance. Instead, by charging and collecting this unlawful surcharge, Defendant increased its own bottom line allowing it to realize financial benefits it would not have otherwise realized without imposing these surcharges, in violation of ERISA's fiduciary duty standards. In sum, these practices demonstrate that Defendant's wellness program is an unreasonable, revenue-generating scheme disguised as a health initiative, directly contravening ERISA's requirements and purpose

## CLASS DEFINITION AND ALLEGATIONS

47.     Plaintiffs bring this action individually and on behalf of all other similarly situated individuals, pursuant to Rule 23(b)(1), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure.

48.     Plaintiffs propose the following Class definitions, subject to amendment as appropriate:

**Tobacco Surcharge Class**

18

> All individuals residing in the U.S. who, from 2014 to the time of judgment, paid a tobacco surcharge in connection with their participation in a health or welfare plan offered by Defendant.

49. Excluded from the Class are Lowes' officers and directors, and judicial officers and their immediate family members and associated court staff assigned to this case.

50. Plaintiffs reserve the right to modify or amend the definitions of the proposed Class before the Court determines whether certification is appropriate.

51. The proposed Class meets the criteria for certification under Fed. R. Civ. P. 23(a), (b)(1), (b)(2), and (b)(3).

52. **Numerosity**. This action is appropriately suited for a class action. The members of the Class are so numerous that the joinder of all members is impracticable. Plaintiffs are informed, believe, and thereon allege, that the proposed Class contains thousands of participants who have been damaged by Defendant's conduct as alleged herein, the identity of whom is within the knowledge of Defendant and can be easily determined through Defendant's records.

53. **Commonality**. This action involves questions of law and fact common to the Class. The common legal and factual questions include, but are not limited to, the following:

   a. Whether Defendant's tobacco surcharge discriminates against participants based on a health status related factor;

   b. Whether Defendant offered an opportunity to satisfy an alternative standard at least once during each Plan year;

   c. Whether Defendant offers a reasonable alternative standard by which a participant could receive the "full reward" of the tobacco surcharge;

   d. Whether Defendant provided the proper notices of an alternative standard in all the plan materials describing the surcharge;

   e. Whether Defendant's tobacco surcharge program violates ERISA;

   f. Whether Defendant breached its fiduciary duties by collecting and retaining the tobacco surcharge;

19

g.   Whether Defendant breached its fiduciary duties by failing to periodically review the terms of its surcharge program to ensure compliance with ERISA and applicable regulations;

h.   The appropriate mechanisms to determine damages on a class-wide basis

54.   **Typicality**. Plaintiffs' claims are typical of the claims of the members of the Class, because, *inter alia*, all Class members have been injured through the uniform misconduct described above and were charged improper and unlawful tobacco surcharges. Moreover, Plaintiffs' claims are typical of the Class members' claims because Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all members of the Class. In addition, Plaintiffs are entitled to relief under the same causes of action and upon the same facts as the other members of the proposed Class.

55.   **Adequacy of Representation**. Plaintiffs will fairly and adequately protect the interests of the members of the Class. Plaintiffs and members of the Class each participated in health and welfare plans offered by Defendant and was harmed by Defendant's misconduct in that they were assessed unfair and discriminatory tobacco surcharges. Plaintiffs will fairly and adequately represent and protect the interests of the Class and has retained competent counsel experienced in complex litigation and class action litigation. Plaintiffs have no interests antagonistic to those of the Class, and Defendant have no defenses unique to Plaintiffs.

56.   **Superiority**. A class action is superior to other methods for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against Defendant. It would be virtually impossible for a member of the Class, on an individual basis, to obtain effective redress for the wrongs done to him or her. Further, even if the Class members could afford such individualized litigation, the court

20

system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no management difficulties under the circumstances here.

57.     Plaintiffs seek injunctive, declaratory, and equitable relief on grounds generally applicable to the Class. Unless the Class is certified, Defendant will be allowed to profit from its unfair and discriminatory practices, while Plaintiffs, the members of the Class, and the Plan will have suffered damages. Unless Class-wide injunctions are issued, Defendant may continue to benefit from the violations alleged, and the members of the Class will continue to be unfairly treated.

## CAUSES OF ACTION

### COUNT I
### UNLAWFUL IMPOSITION OF A DISCRIMINATORY TOBACCO SURCHARGE
### (Violation of 29 U.S.C. § 1182)

58.     Plaintiffs re-allege and incorporate herein by reference allegations 1–56 of this Complaint.

59.     Defendant unlawfully imposes a tobacco surcharge on all participants who use tobacco in violation of ERISA § 702. By imposing discriminatory monthly premium increases on participants and their family members who use tobacco, without complying with the regulatory requirements, Defendant is violating ERISA § 702(b), 29 U.S.C. § 1182(b)(1) and 42 U.S.C. § 300gg-4. This discrimination stems from Defendant's decision not to provide a reasonable

21

alternative standard that ensures participants who satisfy that standard are provided with the full reward, in violation of ERISA and the Final Regulations.

60. ERISA explicitly prohibits group health plans from requiring "any individual (as a condition of enrollment or continued enrollment under the plan) to pay a premium or contribution which is greater than such premium or contribution for a similarly situated individual enrolled in the plan on the basis of any health status-related factor." *See* 29 U.S.C. § 1182(b). Defendant's Plan violates this prohibition by failing to offer an alternative standard that allows participants to avoid the surcharge for the entire year and by failing to provide proper notice of the alternative standard in all plan materials discussing the premium differential. Because Defendant's tobacco surcharge is imposed in a discriminatory manner, Lowes has the burden of showing its tobacco cessation program is compliant with the regulatory framework. *See Cunningham v. Cornell Univ.*, 145 S. Ct. 1020 (2025) ("the burden of persuasion as to certain elements of a plaintiff's claim may be shifted to defendants, when such elements can fairly be characterized as affirmative defenses or *exemptions*." (citation omitted)). Lowes cannot make that showing.

61. Defendant's imposition of the tobacco surcharge violates ERISA § 702 by violating the implementing Final Regulations, including but not limited to 29 C.F.R. § 2590.702(f)(4) and 45 C.F.R. § 146.121(f)(4).

62. ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a participant or beneficiary to bring a civil action to: (A) enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan. *See* 29 U.S.C. § 1182(b). Because Defendant's surcharge program does not satisfy several of the criteria that plans must comply with to qualify as a compliant "program[] of health promotion and disease prevention,"

22

Defendant cannot qualify for the statutory safe-harbor and the tobacco surcharge is, therefore, unlawful and discriminatory. Plaintiffs and Class Members are entitled to relief under ERISA § 502(a)(3).

63.    Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), Plaintiffs seek all available and appropriate remedies to redress Defendant's violations of ERISA's anti-discrimination provisions outlined in § 1182(b) and § 300gg-4, including but not limited to declaratory relief, restitution, and any other relief necessary to remedy Defendant's unlawful conduct, as set forth in the Prayer for Relief.

## COUNT II
### BREACH OF FIDUCIARY DUTY
### (Violation of ERISA §§ 404 and 406, 29 U.S.C. §§ 1104 and 1106)

64.    Plaintiffs re-allege and incorporate herein by reference allegations 1–56 of this Complaint.

65.    ERISA requires a fiduciary to act "solely in the interest of participants," to do so with "the care, skill, prudence, and diligence" of a prudent person, "in accordance with the documents and instruments governing the plan," and to refrain from "deal[ing] with the assets of the plan" in the fiduciary's own interest. 29 U.S.C. §§ 1104(a)(1); 1106(b)(1). These duties of loyalty and prudence are the "highest known to the law" and require fiduciaries to have "an eye single to the interests of the participants and beneficiaries." *Donovan v. Bierwirth*, 680 F.2d 263, 272 n.8 (2d Cir. 1982).

66.    Instead of loyally and prudently acting in the best interests of Plan participants, Defendant chose to use Plan assets to exclusively benefit itself, to the detriment of the Plan and its participants, by unlawfully withholding millions of dollars in tobacco surcharges from

23

participants' paychecks and using these funds to offset its own obligations to contribute to the Plan.

67.     Each year, Defendant administered the Plan within the meaning of 29 U.S.C. § 1002(16) and was a fiduciary within the meaning of 29 U.S.C. § 1002(21), in that it exercised discretionary authority and discretionary control respecting the management of the Plan and its surcharge programs, including the decision not to offer a reasonable alternative standard. Year after year, Defendant exercised discretionary authority with respect to the administration of the unlawful surcharge program by administering a surcharge program without providing reasonable alternatives that allowed "all similarly situated individuals" to avoid the surcharge for the entire plan year, dictated the eligibility criteria and penalties for tobacco use, failed to provide participants with the necessary notices, and failed to periodically review the terms of the surcharge program to ensure compliance with ERISA.

68.     Lowes controlled and disseminated to all employees the contents of the benefits guides describing the premium differential for tobacco users but failed to notify participants of a reasonable alternative standard by which they could avoid the entire year of surcharges, regardless of when they satisfied the alternative standard, in violation of the regulations. Lowes also failed to provide the contact information to access the smoking cessation program it offered and failed to provide the necessary disclosure regarding the recommendations of participants' physicians being accommodated. Further, Lowes failed to adequately and regularly review the terms of its tobacco surcharge and "wellness program" and the accompanying communications to participants to ensure they complied with ERISA and the Final Regulations. Year after year, Defendant failed to properly institute safeguards against administering an unlawful program that violated the statute and shortchanged participants. These actions reflect Lowes's active role in administering a non-

24

compliant "program[] of health promotion and disease prevention," resulting in an unlawful and discriminatory tobacco surcharge in violation of ERISA.

69.     Lowes breached its fiduciary duties by administering a Plan that did not conform with ERISA's anti-discrimination requirements. Lowes acted disloyally by causing Plaintiffs and members of the Class to pay tobacco surcharges that were unlawful because they were associated with a non-compliant wellness program.

70.     As a result of the imposition of the unlawful and discriminatory tobacco surcharges, Lowes enriched itself at the expense of the Plan, resulting in it receiving a windfall. Defendant breached its fiduciary duties by prioritizing its own financial interests over the interests of Plan's participants by deducting from participants' paychecks the amounts of the surcharges without providing an alternative avenue (aside from quitting tobacco) to avoid the surcharge. By offering a "wellness program" that precluded "all similarly situated individuals" from obtaining the "full reward," and by failing to adequately disclose participants' rights under tobacco wellness program, Lowes administered a program that disproportionately benefited itself at the expense of Plan participants. By collecting unlawful surcharges and using them to offset its own contributions to the Plan, Lowes was unjustly enriched at the expense of Plan participants. Rather than use those funds to offset costs for other (non-smoking) participants, Lowes used those funds to offset its own contributions to the Plan. This is demonstrative of Lowes's failure to act solely in the interests of participants and beneficiaries, in violation of ERISA's duty of loyalty under 29 U.S.C. § 1104(a)(1)(A).

71.     Lowes caused the Plan to engage in transactions that constituted a direct or indirect exchange of Plan assets for the benefit of a party in interest—namely, itself—and improperly used Plan assets for its own financial advantage, in violation of 29 U.S.C. § 1106(a)(1). Lowes is a party

in interest, as that term is defined under 29 U.S.C. § 1002(14), because it is both a Plan fiduciary and the employer of Plan participants.

72. By retaining the amounts of the tobacco surcharges, Lowes increased its own monies, earned interest on that money, and saved the money it would have had to contribute to the Plan. In doing so, it dealt with Plan assets for its own benefit, in violation of ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1), which prohibits fiduciaries from engaging in self-dealing and using plan assets for their own benefit. Lowes did not use the tobacco surcharges to offset the premium contributions of non-nicotine-users. Rather, by retaining the surcharges without providing participants with an avenue to earn the "full reward" to which they are entitled, Lowes improperly benefitted from its own wellness programs at the expense of Plan participants.

73. Defendant breached its fiduciary duties by: failing to properly disclose material information about the wellness programs to participants, thereby misleading or depriving them of the ability to make informed decision; administering a wellness program that does not conform with ERISA's anti-discrimination provisions, in violation of ERISA § 404, 29 U.S.C. § 1104(a)(1)(D); acting on behalf of a party whose interests were averse to the interests of the Plan and the interests of its participants (and their beneficiaries), in violation of ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(2); and by failing to act prudently and diligently to review the terms of the wellness programs (and the Plan) and Plan communications to ensure they properly complied with the regulatory requirements in violation of 29 U.S.C. § 1104(a)(1)(B). These breaches caused Plaintiffs and the Class to incur unlawful and discriminatory surcharges. Had Defendant conformed with its fiduciary duties under ERISA, it would have offered a compliant reasonable alternative standard to all participants that used tobacco that enabled them to obtain the "full reward" regardless of when they satisfied that standard during the Plan year, it would have

26

provided participants with the necessary disclosures, it would have reviewed the terms of the tobacco surcharge and the plan communications regarding that surcharge regularly to ensure they complied with ERISA, and would have ensured that any funds collected from the surcharge program went directly to the Plan and its participants.

74.     As a direct and proximate result of these fiduciary breaches, Plaintiffs and members of the Class collectively lost millions of dollars in the form of unlawful surcharges that were deducted from their paychecks.

75.     Plaintiffs are authorized to bring this action on a representative basis on behalf of the Plan pursuant to 29 U.S.C. § 1132(a)(2). Pursuant to 29 U.S.C. § 1109, Defendant is liable to: make good to the Plan all losses resulting from its breaches, including but not limited to any and all equitable and remedial relief as is proper, disgorge all unjust enrichment and ill-gotten profits, and to restore to the Plan or a constructive trust all profits acquired through its violations, as alleged herein.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray that judgment be entered against Defendant on all claims and requests that the Court awards the following relief:

A.  An Order certifying this action as a class pursuant to Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiffs as Class representatives for the Class, and appointing the undersigned to act as Class Counsel;

B.  A declaratory judgment stating that the unlawful and discriminatory tobacco surcharges imposed on participants violate ERISA's anti-discrimination provisions set forth in ERISA § 702, 29 U.S.C. § 1182;

C.  An Order instructing Defendant to reimburse all persons who paid the unlawful and discriminatory surcharges;

27

D.  A declaratory judgment stating that Defendant breached its fiduciary duties in violation of ERISA § 404, 29 U.S.C. § 1104 for, *inter alia*, instituting a surcharge on participants without offering a reasonable alternative standard in violation of ERISA's anti-discrimination provisions and for failing to adequately monitor the terms of the Plan and wellness program, as well as communications with participants, to ensure it complied with ERISA and the applicable regulations;

E.  An Order requiring Defendant to provide an accounting of all prior payments of the surcharges under the Plan;

F.  Declaratory and injunctive relief as necessary and appropriate, including enjoining Defendant from further violating the duties, responsibilities, and obligations imposed on it by ERISA with respect to the Plan and ordering Defendant to remit all previously collected surcharges;

G.  Disgorgement of any benefits or profits Defendant received or enjoyed due to the violations of ERISA § 702, 29 U.S.C. § 1182(b);

H.  Restitution of all surcharge amounts Defendant collected;

I.  Surcharge from Defendant totaling the amounts owed to participants and/or the amount of unjust enrichment obtained by Defendant as a result of its collection of the unlawful and discriminatory tobacco surcharges;

J.  Relief to the Plan from Defendant for its violations of ERISA § 404, 29 U.S.C. § 1104, under 29 U.S.C. § 1109, including a declaration that the tobacco surcharges are unlawful; restoration of losses to the Plan and its participants caused by Defendant's fiduciary violations; disgorgement of any benefits and profits Defendant received or enjoyed from the use of the Plan's assets or violations of ERISA; surcharge; payment to the Plan of the amounts owed to members who paid the surcharges; removal and replacement of the Plan's fiduciaries, and all appropriate injunctive relief, such as an

28

Order requiring Defendant to stop imposing the unlawful and discriminatory surcharges on participants in the future.

K. An award of pre-judgment interest on any amounts awarded to Plaintiffs and the Class pursuant to law;

L. An award of Plaintiffs' attorneys' fees, expenses, and/or taxable costs, as provided by the common fund doctrine, ERISA § 502(g), 29 U.S.C. § 1132(g), and/or other applicable doctrine; and

M. Any other relief the Court determines is just and proper.

Dated: June 16, 2025                      Respectfully submitted,


                                          **SIRI & GLIMSTAD LLP**

                                          /s/ *Dana Smith*
                                          _____

                                          Dana Smith (NC Bar No. 51015)
                                          Oren Faircloth (*pro hac vice* forthcoming)
                                          745 Fifth Avenue, Suite 500
                                          New York, New York 10151
                                          Tel: (212) 532-1091
                                          E: dsmith@sirillp.com
                                          E: ofaircloth@sirillp.com

                                          *Attorneys for Plaintiffs and the Proposed Class*

29